## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

———————

GEORGE AVALOS,

     Plaintiff,

vs.                                                                   Civil No. 05-796 WJ/KBM

DOÑA ANA BOARD OF COUNTY
COMMISSIONERS, COUNTY OF
DOÑA ANA, and GILBERT APODACA,
in his individual and official capacity,
JOHN DOES 1-3 and JOHN DOES 1-4,
in their individual and official capacities,

     Defendants.

## MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION FOR QUALIFIED IMMUNITY SUMMARY JUDGMENT

     THIS MATTER comes before the Court pursuant to Defendants Doña Ana County Board of County Commissioners, Doña Ana County and Gilbert Apodaca's Motion for Qualified Immunity Summary Judgment (Doc. 21). Having reviewed the submissions of the parties and being fully advised on the relevant law, I conclude that the motion shall be partially granted and partially denied.

## BACKGROUND

     Plaintiff filed his Complaint in this matter on July 22, 2005. Named as Defendants in the Complaint are Doña Ana County, Doña Ana County Board of Commissioners, Gilbert Apodaca in both his individual and official capacities, three John Doe County employees and three John Doe elected officials of Doña Ana County. In the Complaint Plaintiff alleges that he was employed by Doña Ana County from 1993 to 2002 and that he was terminated from his employment in

violation of his procedural and substantive due process rights, in retaliation for exercising his First Amendment right to free speech, and in breach of an employment contract. Plaintiff also alleges that Defendant Apodaca conspired with John Does to violate Plaintiff's due process rights. Defendants Apodaca, the Board of County Commissioners and the County filed the instant motion for qualified immunity summary judgment on February 6, 2006.[1]

Defendants' statement of undisputed facts begins, chronologically, with the pre-determination hearing conducted immediately prior to Plaintiff's termination. Defendants provide no background facts regarding the events leading up to Plaintiff's termination, and the Court is somewhat at a loss how it is to make sense of the facts of this case for purposes of ruling on the motion for summary judgment without assuming the truth of many of the general allegations in Plaintiff's Complaint or digging through the evidence looking for background. For instance, the Court must assume (1) that Plaintiff was employed by the County; (2) that the nature of Plaintiff's employment had something to do with road projects; (3) that Defendant Apodaca was a County Commissioner at times relevant to the lawsuit; (4) that, because the issues were considered at the pre-determination hearing, Plaintiff was involved in the paving of an airport road, an Afton road project, a stop sign project and travel; and (5) that Defendant Apodaca and/or the County Commission had something to do with Plaintiff's termination by way of informal or formal complaints or recommendations. Fortunately, most of these assumptions are not material, though they are necessary to even a rudimentary understanding of the issues in this case. For those background facts that are material, the Court has found support in the evidence and assumed

_____

[1]The John Doe Defendants remain unnamed and are not a party to this motion.

2

those facts in a light most favorable to Plaintiff as the nonmoving party.  The facts, as the Court has been able to piecemeal from its own reading of the record, are as follows.

Plaintiff was first employed by Doña Ana County as its Transportation Director in 1993. Subsequently, he was promoted to the position of Public Works Director.  Plaintiff's employment was terminated in 2002.  At all times material to this lawsuit, David King was the Doña Ana County Manager.

The Doña Ana County Commission makes policy for the county by way of resolution or directives after a duly constituted county commission meeting.  According to Mr. King, Plaintiff and Defendant Commissioner Apodaca shared a mutual lack of respect and appreciation for one another.  On at least one occasion, Plaintiff discussed a road project with Mr. King and complained that he was forced by Defendant Apodaca to do the project even though it had not been approved by the full commission.  Plaintiff complained to Mr. King, individual county commissioners and other county employees that Apodaca was not following proper policies and procedures, was ordering the paving of roads in his own district, and was ordering Plaintiff to use funds allocated to health care to construct a road.  Plaintiff did not go public with his complaints. He did not send letters to newspapers and did not complain to the Association of Counties.

Under County regulations and ordinances including the Doña Ana County personnel rules, the county manager has the delegated authority of the county commission to make all decisions regarding the hiring and termination of personnel.  It is normal and routine for the county manager to hear complaints from the commission and individual commissioners, and it is not a violation of any law or county policy for an individual commissioner to speak one-on-one with the county manager.  However, the commissioners are not supposed to be involved in personnel decisions.

3

In spite of the fact that the commissioners are not supposed to be involved in the personnel decisions, individual commissioners occasionally did get involved. At times, an individual commissioner would ask Mr. King to interview a particular person, but these requests would normally stop short of insisting that Mr. King hire or terminate an individual. On at least two occasions, however, Defendant Commissioner Apodaca made specific requests regarding the hiring or firing of a particular person.

Defendant Apodaca made it clear to Mr. King on several occasions that he did not want Plaintiff to be a director for the County. He also made it clear that he wanted a relative of his, Dicky Apodaca, to be the road superintendent for the County. After it was discovered that Plaintiff had performed work on a road at the airport after the Commission voted against awarding a paving contract for that road, Defendant Apodaca made it clear to Mr. King that he wanted Plaintiff's career with the County to end. Mr. King informed Defendant Apodaca that he (Mr. King) would have to follow County policy and conduct an investigation. Defendant Apodaca did not believe an investigation was necessary and wanted Mr. King to terminate Plaintiff without an investigation. Defendant Apodaca made it clear that Mr. King's position as County Manager would end if he did not terminate Plaintiff's employment.[2] A month or two later, Defendant Apodaca made it clear to Mr. King that he believed Dicky Apodaca was the best candidate to replace Plaintiff.

---

[2]In their reply brief, Defendants assert that Apodaca did not have the authority to terminate Mr. King's employment unilaterally, and Mr. King could only be terminated by the Board of County Commissioners. Because this assertion was made for the first time in Defendants' reply, the Court will not consider it in ruling on this motion and will also decline to consider any corresponding attempted argument that Apodaca was not Mr. King's supervisor. In any event, Defendants do not actually provide any argument in their reply or otherwise that Apodaca was not Mr. King's supervisor.

Plaintiff requested a pre-determination hearing with regard to his termination. A person by the name of Mr. Babington acted as hearing officer, but Mr. King was in attendance at the hearing acting as the "determination officer." Mr. King, having presided over dozens of Loudermill type hearings as County Manager, is familiar and experienced with the Loudermill hearing process required before a government employee is terminated. The hearing occurred through three, non-consecutive days with everyone involved sitting around a large table and speaking with one another. Mr. King did not impose any time constraints on the parties at the hearing, and the hearing continued until everyone present had an opportunity to present everything they wanted to present. Plaintiff was represented by an attorney at the hearing, and his attorney was present at all times during the hearing. Plaintiff's attorney was given an opportunity to cross-examine witnesses and call witnesses on Plaintiff's behalf. It was Mr. King's responsibility to make the final decision to terminate Plaintiff's employment after the hearing. While Mr. King had the authority to delegate the final determination with regard to Plaintiff's employment, Mr. King made the final determination himself.

Defendant Apodaca was not present during the hearing and did not assist Mr. King in drafting the determination letter. However, Mr. King did not inform Plaintiff or Plaintiff's counsel that he had been directed by Defendant Apodaca to fire Plaintiff, that his own job was in jeopardy if he did not fire Plaintiff, or that he had been directed by Apodaca to replace Plaintiff with a member of Apodaca's family.

Several issues were considered during the hearing. One of those issues was the paving of the airport road. Plaintiff admits this issue was discussed at the hearing, but denies that he violated any County policies or directives with respect to that road project. Also considered

5

during the hearing was the Afton Road Project, an issue regarding the Winchester Road/ Remington Road stop sign, and travel issues.  Plaintiff admits these issues were discussed at the hearing, but denies that he violated any County policies or directives with respect to any of these issues.

Following the hearing, on August 12, 2002, Mr. King issued a determination letter in which he made findings and conclusions with regard to the issues discussed at the hearing. With regard to the airport road paving project, Mr. King found that Plaintiff began the planning for this paving project at the request of a single Commissioner, Commissioner Terrazas, prior to any consideration of this project by the full Commission.  At a Commission meeting on April 23, 2002, Plaintiff presented the low bid for hot-mix paving for the project.  The Commission voted not to award the bid and did not approve the expenditure of any funds for the project.  A few days later, Plaintiff directed his staff to chip-seal the road, and chip-sealing is a method of paving.

With regard to the Afton road project, Mr. King found that Afton Road was in need of maintenance.  The road was apparently used heavily by the Public Service Company of New Mexico (PNM), and this use had significant impact on the road.  As such, the County was preparing to negotiate with PNM with regard to the costs of the maintenance because businesses that create significant road impact are usually responsible for some or all of the road costs.  In light of this, the Commission had not approved any funds for the maintenance of the road. Plaintiff proceeded with the Afton Road project and expended approximately $80,000 toward maintenance of the road.

With regard to the Winchester Road/ Remington Road stop sign issue, Mr. King found that Plaintiff removed stop signs at an intersection after a meeting with the public and a single

6

Commissioner, Commissioner Curry.  At this meeting, Plaintiff reported that the signs could be removed based on a study Plaintiff had conducted himself.  Later, the County Manager became concerned about traffic safety at the intersection and ordered Plaintiff to have an engineering study performed by a traffic-engineering consultant.  The consultant study showed that a lack of traffic control at the intersection was dangerous and recommended replacement of the stop signs or an alternate solution.

With regard to the travel issues, Mr. King found that Plaintiff wished to take a trip to Houston for a "pavement rehabilitation" course.  Mr. King had removed this item from the Commission agenda for April 23, 2002 based on Commissioner Apodaca's request.  Apodaca believed the same course was available in Santa Fe.  Plaintiff recommended the Houston trip be placed on the Commission agenda for May 14, 2002.  Plaintiff did not inform Mr. King or the Commission, prior to the May 14 Commission discussion of the Houston trip, that he had already attended a pavement rehabilitation course in Albuquerque.

In the determination letter, Mr. King also commented on Plaintiff's testimony at the hearing and found that Plaintiff had been evasive under questioning.  He concluded that he agreed with the recommendation to terminate Plaintiff's employment based on a finding that Plaintiff had engaged in "negligent performance" and "egregious violations."  The determination letter informed Plaintiff of his right to appeal his termination.  Plaintiff did not appeal his termination through any administrative channels or through any of the available state remedies.  The first legal action that Plaintiff took with regard to his termination was the filing of the instant lawsuit.

According to Mr. King's testimony at his deposition, his decision to terminate Plaintiff's employment was not made until after he had heard and considered all of the evidence at the pre-determination hearing.  He also testified that he made the decision on his own based on his belief that Plaintiff had been insubordinate in his decision to pave the airport road.  Mr. King stated that it is difficult for him to terminate anyone.  According to the Defendants, Mr. King's decision to terminate Plaintiff was based on the valid reasons set forth in the determination letter.  Plaintiff disputes this and contends that Mr. King's decision was based on his own job being in jeopardy if he did not fire Plaintiff.  Plaintiff further believes that Apodaca directed Plaintiff's termination because Plaintiff refused to construct a road using funds that had been allocated by the State Legislature for health care.

Mr. King never expressed to Plaintiff that building or paving the airport road was illegal, but testified in his deposition that using health care funds to construct a road was improper.  According to Plaintiff, Mr. King himself carried out many of Commissioner Apodaca's orders when they were not ethical or legal.  Besides terminating Plaintiff's employment, Mr. King also followed Defendant Apodaca's order to appoint a specific person to investigate Apodaca's own activities.

In the instant motion for qualified immunity summary judgment, Defendants contend that they are entitled to qualified immunity because they did not violate any clearly established constitutional right of Plaintiff's.  Defendants also urge that they are entitled to summary judgment on Plaintiff's procedural due process claim because he did not exhaust his state remedies.  With regard to any substantive due process claim, Defendants argue they are entitled to summary judgment because Plaintiff cannot show that Defendants engaged in any conduct that

would shock the conscience.  Defendants argue that Plaintiff's due process and breach of contract claims must fail because he cannot show that he had an employment contract or any property interest in his employment.  With regard to Plaintiff's First Amendment claim, Defendants assert that Plaintiff's alleged speech did not involve matters of public concern because he did not publicly express his concerns and was speaking only to air grievances of a personal nature.

**LEGAL STANDARD**

The defense of qualified immunity is designed to shield public officials from erroneous suits as well as liability and protects all but the plainly incompetent or those who knowingly violate the law.  Holland v Harrington, 268 F.3d 1179, 1185 (10th Cir. 2001); Hinton v City of Elwood, Kansas, 997 F.2d 774, 779 (10th Cir. 1993).  For this reason, special standards apply to a summary judgment motion raising the defense of qualified immunity.  Hinton, 997 F.2d at 779.  When a defendant asserts a qualified immunity defense, Plaintiff bears the initial burden of making two showings.  Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001); Holland, 268 F.3d at 1185.  First, a plaintiff must show that a defendant's alleged actions violated a constitutional or statutory right.  Medina, 252 F.3d at 1128.  The Court, in determining whether this showing is made, must assess whether the facts, taken in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional or statutory right.  Holland, 268 F.3d at 1185.  If a favorable view of the alleged facts shows the violation of a constitutional or statutory right, the plaintiff must then show that the right was clearly established at the time the allegedly wrongful conduct occurred.  Id. at 1186.  If a plaintiff makes the required showings, the burden then shifts back to the defendant to make the usual showing required of defendants moving for summary judgment.  Hinton, 997 F.2d at 779.

9

Under the usual summary judgment standard, the burden of showing an absence of a genuine issue of material fact falls upon the moving party.  <u>See</u> <u>Adler v Wal-Mart Store, Inc.</u>, 144 F.3d 664, 670 (10th Cir. 1998).  However, when the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by pointing out to the Court that there is an absence of evidence to support the nonmoving party's case. <u>Celotex Corp. v Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Adler</u>, 144 F.3d at 671.  The nonmoving party must then go beyond the pleadings to set forth specific facts showing that there is a genuine issue for trial sufficient to support a verdict for the nonmovant.  <u>Anderson v Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986).  In ruling on a motion for summary judgment, a Court does not weigh the evidence, but determines whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.  <u>Sierra Club v. El Paso Gold Mines, Inc.</u>, 421 F.3d 1133, 1150 (10th Cir. 2005).  In making this determination, the Court must construe all the facts in the record and reasonable inferences that can be drawn from those facts in a light most favorable to the nonmoving party. <u>Worrell v. Henry</u>, 219 F.3d 1197, 1204 (10th Cir. 2000).

**DISCUSSION**

I.     QUALIFIED IMMUNITY

In order to carry his burden when responding to a motion for summary judgment based on qualified immunity, a plaintiff must do more than identify in the abstract a clearly established right and allege that the defendant has violated it.  <u>SH.A. v. Tucumcari Municipal Schools</u>, 321 F.3d 1285, 1287 (10th Cir. 2003).  Rather, the plaintiff must articulate the clearly established

constitutional right and the defendant's conduct which violated the right with specificity.  <u>Romero v. Fay</u>, 45 F.3d 1472, 1475 (10th Cir. 1995).

For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  <u>Baptiste v. J.C. Penney Co.</u>, 147 F.3d 1252, 1255 (10th Cir. 1998). A plaintiff need not show that the very conduct in question has previously been held unlawful.  <u>Id.</u>  He is, however, required to demonstrate the unlawfulness was apparent in light of established law by showing "a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited."  <u>Id.</u> at 1255-56.

Only individual defendants are entitled to qualified immunity; governmental entities and officials sued in their official capacity enjoy no such shield.  <u>Owen v. City of Independence</u>, 445 U.S. 622, 638 (1980); <u>Seamons v. Snow</u>, 206 F.3d 1021, 1029 (10th Cir. 2000); <u>Dill v. City of Edmond, Okla.</u>, 155 F.3d 1193, 1212 (10th Cir. 1998).  Thus, as an initial matter, only Defendant Apodaca sued in his individual capacity is entitled to qualified immunity.  The Board of County Commissioners, Doña Ana County and Defendant Apodaca sued in his official capacity are not entitled to qualified immunity.  Accordingly, to the extent these governmental bodies seek summary judgment based on qualified immunity, the motion is denied.

A.      <u>Is Defendant Apodaca, Sued in His Individual Capacity, Entitled to Qualified Immunity with Regard to Plaintiff's Procedural Due Process Claim?</u>

1.      <u>Has Plaintiff Alleged the Violation of a Constitutional Right</u>?

In order to survive summary judgment on his procedural due process claim, a plaintiff must first show that he had a protected property interest in continued employment.  <u>Meiners v.</u>

University of Kansas, 359 F.3d 1222, 1233 (10th Cir. 2004). He must then show that a material

issue of fact exists as to whether the defendant's conduct deprived him of that interest without

due process.  Patrick v. Miller, 953 F.2d 1240 (10th Cir. 1992).  In their motion for summary

judgment, Defendants state both of these requirements and argue that Plaintiff shows neither a

protected property interest nor that he received inadequate procedural protections.

 For the requirement of showing a protected property interest in continued employment, a

plaintiff must show he was legally entitled to continued employment under principles of state

contract law.  Meiners, 359 F.3d at 1233.  In this Court's experience, most plaintiffs show a

protected property interest in employment by showing that a governmental employer has a written

policy or handbook providing that an employee may only be terminated for cause.  Plaintiff in this

case did not present for the record any Doña Ana County employee handbook or personnel policy

related to a requirement that termination be for cause.  However, Defendants acknowledge in

their initial memorandum the existence of such a policy and merely argue that, "[n]otwithstanding

New Mexico law on this subject, [Plaintiff] was afforded substantial due process . . .."

Defendants' Memorandum in Support (Doc. 22).   In his response, Plaintiff provided New Mexico

case law holding that an employer may be held to have created an implied contract of employment

when its conduct reasonably leads an employee to believe that he will not be terminated without

just cause and fair procedure.  Kiedrowski v. Citizens Bank, 893 P.2d 468 (N.M. App. 1995).

Defendants' reply does not continue the position that Plaintiff lacked a protected property interest

in his employment.

 Defendants provided Plaintiff with all of the outward accouterments afforded to persons

whose employment is terminable only with just cause.  He was afforded a notice of intent to

terminate his employment, and this notice informed him that, "In accordance with Doña Ana

County HR Merit System Ordinance No. 187-99 and its accompanying Procedural Guidelines,

Section 903(A), you have been advised of the bases for the recommended action and will be given

an opportunity to respond."  Defendant's Exhibit 4.  The final Determination Letter informing

Plaintiff that his employment was terminated notified Plaintiff that he had a right to appeal his

termination in accordance with the Human Resources Procedural Guidelines.  Defendant's Exhibit

2.  In light of Kiedrowski, there is sufficient evidence that Plaintiff had a reasonable expectation in

continued employment with Doña Ana County to survive summary judgment on the issue of

whether Plaintiff had a protected property interest in his employment.

     For the requirement that a plaintiff show that he was not afforded adequate procedural

protections before being deprived of a protected property interest, a plaintiff must show that he

was not afforded an opportunity to be heard at a meaningful time and in a meaningful manner.

Patrick, 953 F.2d at 1244.  An opportunity to be heard at a meaningful time in a meaningful

manner requires "(1) in impartial tribunal; (2) notice of charges given a reasonable time before the

hearing; and (3) a pretermination hearing except in emergency situations."  Id.  "A tribunal is not

impartial if it is biased with respect to the factual issues to be decided at the hearing."  Id. at 1245.


     Plaintiff alleges that his procedural due process rights were violated because Mr. King,

who made the final determination with regard to the termination of Plaintiff's employment, was

not impartial given that he had been ordered by Defendant Apodaca to fire Plaintiff or face losing

his own job.  Plaintiff alleges that Defendant Apodaca personally directed Mr. King to violate

Plaintiff's due process rights.  See Beedle v. Wilson, 422 F.3d 1059, 1074 (10th Cir. 2005) (a

supervisor may be held liable for a subordinate's constitutional violations if he personally directed the violation or had actual knowledge of the violation and acquiesced in its continuance).

In Patrick, a plaintiff presented evidence that a hearing officer felt coerced by the hearing officer's supervisor to approve the plaintiff's termination.  953 F.2d at 1245.  The Tenth Circuit held that the plaintiff provided sufficient evidence of the hearing officer's bias due to the coercion by the supervisor to overcome the supervisor's motion for summary judgment.  Id. at 1246.  Accordingly, evidence that a decisionmaker was threatened with termination if he did not make a particular determination is sufficient to show a fact issue with regard to whether a plaintiff's constitutional right to an impartial tribunal was violated.  In their reply brief, Defendants appear to attempt to distinguish Patrick by asserting that Apodaca had no individual authority to terminate King's employment but could only vote to terminate him as a member of the Board of County Commissioners.[3]  While this fact may be true, it does not necessarily indicate as a matter of law that Apodaca was not King's supervisor[4] or that Apodaca cannot be held responsible for directing Mr. King to commit a constitutional violation.  Additionally, because the issue was not raised in Defendants' original motion, Plaintiff cannot be said to have had the burden of showing that Apodaca was Mr. King's supervisor in response to the motion.

_____

[3]Defendants made no actual argument to this effect, but appear to attempt this argument by asserting new facts in their reply indicating that the authority to terminate Mr. King rested with the Board of County Commissioners rather than with any individual board member.

[4]The Court has found no case law defining a supervisor for purposes of supervisory liability claims under 42 U.S.C. § 1983.  However, in Pate v. Wallace, 188 F.3d 508, 1999 WL 701897 (6th Cir. 1999) (unpublished opinion), the Sixth Circuit agreed with a district court that individual members of a committee responsible for hiring an executive director could be held liable for the executive director's decision to terminate a person because each of the members was a supervisory official.

Defendants also attempt to distinguish <u>Patrick</u> by noting that the hearing officer in <u>Patrick</u> testified that his decision to terminate the plaintiff went against his better judgment while Mr. King has testified that his decision to terminate Plaintiff was consistent with his better judgment. This distinction is not material to the procedural due process claim.  Whether Mr. King believes his ultimate decision would have been the same absent Apodaca's alleged coercion is not relevant to whether he was acting under a coercive influence at the time he made the decision.  Put another way, if Mr. King was a biased decisionmaker, Plaintiff's due process rights were violated regardless of whether Mr. King's actual decision was the product of that bias.

Based on the evidence in the record supporting an inference that Plaintiff had a protected property interest in his employment and that his protected interest was taken from him based on the decision of a biased decisionmaker, Plaintiff has shown a disputed issue of material fact with regard to whether his constitutional rights were violated.

2.     <u>Has Plaintiff Shown that the Right was Clearly Established</u>?

Having shown the violation of a constitutional right, Plaintiff must now show that the right was clearly established at the time the allegedly wrongful conduct occurred.  <u>Holland</u>, 268 F.3d at 1186.  For a right to have been clearly established, the contours of the right must have been sufficiently clear at the time such that a reasonable official would have understood that his or her conduct was unlawful.  <u>Id.</u>  A constitutional right is clearly established for qualified immunity purposes when there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts has found the law to be as the plaintiff maintains.  <u>Camfield v City of Oklahoma City</u>, 248 F.3d 1214, 1228 (10th Cir. 2001).

Patrick is a Tenth Circuit case that is almost directly on point, and it was decided more than fourteen years ago.  Based on Patrick, a reasonable supervisory official would have understood that an employee's right to an impartial tribunal would be violated if the official threatened to fire the person responsible for making the decision to fire the employee.  Accordingly, Plaintiff has met his burden of showing the violation of a clearly established right, and Defendant Apodaca is not entitled to qualified immunity with regard to Plaintiff's procedural due process claim.

B.   Is Defendant Apodaca, Sued in His Individual Capacity, Entitled to Qualified Immunity with Regard to Plaintiff's Substantive Due Process Claim?

"Substantive due process claims  . . . are founded upon deeply rooted notions of fundamental personal interests derived from the Constitution."  Hennign v. City of Shawnee, 155 F.3d 1249, 1256 (10th Cir. 1998) (internal quotations and citations omitted).  Substantive due process prevents the government from engaging in conduct that shocks the conscience.  Id. at 1257.  Substantive due process requires only that termination of a protected interest not be arbitrary, capricious, or without a rational basis.  Id.  Tenth Circuit precedent has not addressed the extent to which property interests in employment are fundamental and thus protected by the substantive due process doctrine.  Shrum v. City of Coweta, Okla., 449 F.3d 1132, 1145 (10th Cir. 2006); Hennign, 155 F.3d at 1257.  Accordingly, it is not clear that Plaintiff's interest in his employment with Doña Ana County would be a fundamental property interest protected by substantive due process.  Assuming that it is, however, I conclude that Plaintiff has failed to show that the termination of that interest was arbitrary, capricious or without a rational basis.  See Hennign, 155 F.3d at 1257.  Moreover, Plaintiff's substantive due process claim is, in essence, a

16

restatement of his other constitutional claims.  "Where a plaintiff has recourse to an explicit

textual source of constitutional protection, a more general claim of substantive due process is not

available."  Shrum, 449 F.3d at 1145.  Therefore, Plaintiff has failed to allege a constitutional

violation of his substantive due process rights, and Defendant Apodaca is entitled to summary

judgment on this claim.

     C.     <u>Is Defendant Apodaca, Sued in His Individual Capacity, Entitled to Qualified
Immunity with Regard to Plaintiff's First Amendment Claim?</u>

A First Amendment retaliation claim is evaluated using a well-established four part inquiry

in which (1) the Court determines whether the Plaintiff's speech involves a matter of public

concern; and, if so (2) the Court balances the Plaintiff's interest in commenting on matters of

public concern against the interests of the Defendants, as employers, in promoting the efficiency

of the public services it performs through its employees; then, if the balance tips in favor of the

Plaintiff (3) the Plaintiff must show that the speech was a substantial or motivating factor in a

detrimental employment decision; then, if the Plaintiff establishes that the speech was a factor, (4)

the Defendants may demonstrate that they would have taken the same action with regard to

Plaintiff even in the absence of the protected speech.  <u>Finn v. New Mexico</u>, 249 F.3d 1241, 1246

(10th Cir. 2001); <u>Lybrook v. Farmington Municipal Schools Bd. of Educ.</u>, 232 F.3d 1334 (10th

Cir. 2000).

Defendants argue that Plaintiff did not engage in any protected speech involving a matter

of public concern.  "[A] public employee's statements on issues not of general public concern are

unprotected by the First Amendment."  <u>Wilson v. City of Littleton</u>, 732 F.2d 765, 767 (10th Cir.

1984).  "Whether an employee's speech addresses a matter of public concern must be determined

by the content, form, and context of a given statement . . ..” Id. at 768 (citing Connick v. Myers, 461 U.S. 138 (1983)).  To be protected speech, an expression must sufficiently inform the issue as to be helpful to the public in evaluating the conduct of government.  Id. at 768.  Speech which discloses evidence of corruption, impropriety, or other malfeasance on the part of public officials is speech on a matter of public concern.  Schuler v. City of Boulder, 189 F.3d 1304, 1308 (10th Cir. 1999).  Speech that seeks to expose improper operations of the government or questions the integrity of government officials is also speech on a matter of public concern.  Conaway v. Smith, 853 F.2d 789, 797 (10th Cir. 1988).  Additionally, First Amendment protection applies to protected speech even when a public employee communicates privately with his employer instead of expressing his views publicly.  Givhan v. Western Line Consol. Sch. Dist., 439 U.S. 410, 413 (1979).

Defendants’ sole argument that Plaintiff’s speech did not involve a matter of public concern is based on the fact that Plaintiff did not complain publicly about his concerns.  However, it is undisputed for purposes of this motion that Plaintiff complained to his supervisor, Mr. King, about being ordered by Defendant Apodaca to perform road projects using funds allocated by the state legislature for health care and that Plaintiff subsequently refused to perform the road project without approval of the Board of County Commissioners.  Plaintiff’s expressions of concern question the integrity of a government official and disclose evidence of corruption, impropriety, or other malfeasance on the part of a government official.  As such, the speech was on a matter of public concern.  While it was not made to the media or made publicly, First Amendment protection applies when speech on a matter of public concern is made privately to an employer, and Plaintiff’s speech to Mr. King falls within that category.

Defendants also argue that Plaintiff cannot satisfy his burden of showing a genuine issue of material fact on the third element of his First Amendment claim - that his complaints were a substantial or motivating factor in the decision to terminate his employment.  For the third element, Plaintiff has the burden of establishing causation.  Maestas v. Segura, 416 F.3d 1182, 1188 (10th Cir. 2005).  An employee need not prove his speech was the sole reason for the defendants' action.  Id.  Nor is he required to show that "but for" his speech the subsequent employment action would not have occurred.  Id.  Rather, he must show that the protected speech played a substantial part in the employer's decision to adversely alter the employee's conditions of employment.  Id.  The employee "must produce evidence linking the employer's action to the employee's speech."  Id.  "Speculation or hunches amidst rumor and innuendo will not suffice." Id. at 1189.  Adverse action in close proximity to protected speech coupled with evidence of the employer's knowledge of the protected speech may be sufficient evidence on the third prong to withstand summary judgment, but adverse action in close proximity to protected speech without more is not sufficient.  Id.  Conversely, evidence of a long delay between an employee's speech and the adverse employment action tends to undermine any inference of retaliatory motive.  Id.

The only evidence Plaintiff offers to connect his termination with his protected speech is (1) Mr. King's testimony that Plaintiff discussed concerns with him; and (2) Plaintiff's testimony that he expressed his concerns to Mr. King in November 2001, that Mr. King told Plaintiff that Defendant Apodaca had directed that the road project in question be completed, that Plaintiff refused to complete the road because it was illegal, and that Plaintiff believes that he was terminated because of this.  In addition to this evidence, the record regarding Plaintiff's termination shows that the Notice of Intent to terminate Plaintiff's employment was dated June

10, 2002, and the Determination Letter notifying Plaintiff of the decision to terminate his employment was dated August 12, 2002.

Plaintiff's belief that his protected speech was the cause of his termination is not evidence of the Defendants' motives for terminating Plaintiff's employment.  Thus, his testimony regarding his belief does nothing to support his contention that his protected speech was a substantial or motivating factor in the decision to terminate his employment.  The testimony by Mr. King and Plaintiff that Plaintiff expressed certain concerns and refused to do a road project is evidence that Plaintiff engaged in protected activity, but it does nothing to link the protected activity with Plaintiff's termination.  The only evidence in the record that is relevant to the issue of causation is the evidence that Plaintiff expressed concerns to Mr. King in November 2001 and the evidence that the process for terminating Plaintiff's employment began in June 2002.  This evidence does not show close temporal proximity.  Rather, it shows the opposite - a significant delay of over six months between the time of Plaintiff's speech and the time of his termination.  Thus, Plaintiff has failed to meet his burden of showing a disputed issue of material fact on the third element of his First Amendment claim and has failed to show a violation of his First Amendment rights.  Accordingly, Defendant Apodaca is entitled to summary judgment with regard to this claim.

II.   SUMMARY JUDGMENT ANALYSIS FOR ALL DEFENDANTS ON PLAINTIFF'S CLAIMS

As Plaintiff points out in his response brief, Defendants characterized the instant motion as one based on qualified immunity.  Additionally, Defendants obtained a stay of the proceedings in this case on the basis of the motion because qualified immunity is not merely a defense to liability but also shields government officials from the burdens of litigation.  Hence, Plaintiff found

objectionable the fact that Defendants raised issues not properly raised in a motion for qualified immunity summary judgment.  The Court also finds this objectionable, but does not see any benefit to the parties or to the Court in allowing continued litigation of claims that must necessarily fail.  To the extent that Defendants raised these other issues with sufficient clarity to give rise to a burden on Plaintiff's part to respond, the Court will address them.

     A.    <u>Procedural Due Process and Breach of Contract</u>

The Court, above, concluded that Plaintiff has met his burden of showing a disputed issue of material fact with regard to whether Defendant Apodaca violated his procedural due process rights.  Defendants raised the issue of respondeat superior liability of Doña Ana County and the Board of County Commissioners for the procedural due process claim in their Memorandum in Support of the instant motion.  <u>See</u> Doc. 22 p. 14.  However, they raised the issue obliquely by inserting it in the specific section of the brief addressed to the issue of qualified immunity.  This did not give Plaintiff a clear burden of addressing the issue because these Defendants are not entitled to qualified immunity, and Plaintiff would have no reason to delve into extensive legal research on the specific grounds for the assertion of qualified immunity by these Defendants.

Defendants also inserted an argument in the qualified immunity section that they are entitled to summary judgment on the procedural due process claim because Plaintiff's employment would have been terminated even if he had received a proper hearing.  Defendants note that this is an affirmative defense for which they bear the burden of persuasion, so it is truly a mystery that this argument is made within the context of qualified immunity.  In any event, Defendants have failed to meet their burden of showing that they are entitled to summary judgment on the basis of this affirmative defense.

Defendants also argued that Plaintiff's procedural due process claim and his state law breach of contract claim must fail for lack of an employment contract. As noted above, Defendants tap dance around the issue of the Doña Ana County Personnel Ordinances in such a manner that appears to admit the existence of the ordinances at the same time the argument is made that there is no evidence of any contract. Additionally, there is evidence in the record that such ordinances or policies do exist because they are referenced in the notices sent by Defendants to Plaintiff. Finally, Plaintiff has shown that there is a fact issue whether the conduct of the Defendants in providing Plaintiff with the notices informing him of rights under the personnel policies and in providing him with a predetermination hearing give rise to an implied employment contract.

Defendants' final argument for summary judgment with regard to the procedural due process claim is that they are entitled to summary judgment on this claim because Plaintiff failed to exhaust his available state remedies. As Plaintiff correctly points out, exhaustion of state administrative remedies is not a prerequisite to an action under 42 U.S.C. § 1983. Patsy v. Bd. of Regents of State of Fla., 457 U.S. 496 (1982). However, due process rights may be waived if a litigant fails to take advantage of available procedures. Pitts v. Bd. of Educ. of U.S.D. 305, Salina, Kan., 869 F.2d 555, 557 (10th Cir. 1989).

There is a strong presumption against waiver of fundamental due process rights, and courts indulge every presumption against such a waiver. Id. Whether a litigant has waived his due process rights depends on the facts of a particular case. Id. In this case, Plaintiff took advantage of the available predeprivation procedures but declined the available postdeprivation

procedures.  He complains in this Court that the predeprivation procedures were inadequate because he was not provided an impartial tribunal.

The cases in which the Tenth Circuit found a waiver of due process rights all involved litigants who were challenging the very procedures that they declined.  For instance, in Pitts, the plaintiff did not participate in the available predeprivation hearing process so waived his right to challenge the adequacy of the predeprivation hearing process.  Id.  Similarly, in Sandoval v. City of Boulder, 388 F.3d 1312 (10th Cir. 2004), the plaintiff waived her right to sue a city for failing to give her a predeprivation hearing because she did not request such a hearing until two years after the deprivation and after she had already initiated litigation.

Additionally, there is a significant difference between predeprivation procedures and postdeprivation procedures, and adequate postdeprivation procedures often will not cure the lack of an adequate predeprivation procedure.  See e.g., Zinermon v. Burch, 494 U.S. 113, 132-33 (1990); Wolfenbarger v. Williams, 774 F.2d 358 (10th Cir. 1985).  A case cited by Defendants in support of their argument for waiver illustrates this difference particularly well.  In Copple v. City of Concordia, Kan., 814 F.Supp. 1529, 1539 (D.Kan. 1993), the court held that the plaintiff had waived his right to challenge postdeprivation procedures by failing to take advantage of the postdeprivation procedures that were made available to him.  However, the court did not conclude that the plaintiff had waived his right to challenge to predeprivation procedures that he had been afforded and in which he participated, and the court analyzed the adequacy of these procedures on the merits.  Id. at 1537-38.

Plaintiff here does not challenge any procedures of which he did not avail himself.  He challenges only the procedures in which he actually participated.  Additionally, he challenges the

23

predeprivation procedures he was afforded, and the procedures of which he did not avail himself were all postdeprivation procedures.  Under these circumstances, I conclude that Plaintiff did not waive his procedural due process rights and may litigate his procedural due process claim brought pursuant to 42 U.S.C. § 1983.

Accordingly, the Doña Ana County and the Doña Ana County Board of County Commissioners are not entitled to summary judgment on Plaintiff's procedural due process claim at this time.[5]  The Court notes that Defendants will have further opportunities in the course of this litigation to raise issues with regard to this claim including issues such as respondeat superior liability that were raised in this motion but were not conclusively decided.

B.      Substantive Due Process

In addressing the issue of qualified immunity, the Court has concluded that Plaintiff has not shown the violation of any constitutional right with regard to his substantive due process claim.  Defendants explicitly argued that they were all entitled to summary judgment with regard to this claim because Plaintiff could not show the requisite irrational conduct necessary for such a claim.  See Doc. 22 pp. 16-17.  The Court's conclusion that Plaintiff has failed to show that the termination of his employment was arbitrary, capricious or without a rational basis entitles all of the Defendants to summary judgment with regard to this claim.

C.      First Amendment

---

[5]The Court notes that Defendants made no argument that they are entitled to sovereign immunity on Plaintiff's breach of contract claim under N.M. Stat. Ann. 1978 § 37-1-23.  See Garcia v. Middle Rio Grande Conservancy Dist., 918 P.2d 7, 11 (1996).  Thus, at this time, Plaintiff's failure to produce written personnel policies or ordinances in support of his breach of contract claim is not fatal to his claim.  However, such written evidence of terms of a contract will be the only evidence of a contract sufficient to allow this claim to proceed to a trial, and such evidence will likely also be required in order to proceed with the procedural due process claim.

The Court has already concluded, in addressing the issue of qualified immunity, that Plaintiff failed to show a violation of his First Amendment rights.  The basis for this conclusion - that Plaintiff failed to show that his protected speech was a substantial or motivating factor in the decision to terminate his employment - entitles all of the Defendants to summary judgment with regard to this claim.

**CONCLUSION**

IT IS THEREFORE ORDERED that Defendants Doña Ana County Board of County Commissioners, Doña Ana County and Gilbert Apodaca's Motion for Qualified Immunity Summary Judgment (Doc. 21) is hereby GRANTED IN PART in that all Defendants are granted summary judgment with regard to Plaintiff's substantive due process and First Amendment claims brought pursuant to 42 U.S.C. § 1983.

IT IS FURTHER ORDERED that Defendants Doña Ana County Board of County Commissioners, Doña Ana County and Gilbert Apodaca's Motion for Qualified Immunity Summary Judgment (Doc. 21) is hereby DENIED IN PART with regard to all Defendants and Plaintiff's procedural due process claim brought pursuant to 42 U.S.C. § 1983.

UNITED STATES DISTRICT JUDGE